

1  Aidan W. Butler (SBN 208399)
   Attorney at Law
2  3540 Wilshire Boulevard, Suite 1030
   Los Angeles, California 90010
3  Telephone: (213) 388-5168
   Telecopier: (213) 388-5178
4  tocontactaidan@gmail.com

5  Attorneys for Plaintiff ADINA ZAHARESCU

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  ADINA ZAHARESCU, an          )   CASE NO. SACV09-0428 CJC (ANx)
    individual,                  )
12                               )
                                 )   **EX PARTE APPLICATION FOR**
13            Plaintiff,         )   **TEMPORARY RESTRAINING ORDER**
                                 )   **AND ORDER TO SHOW CAUSE RE**
14       vs.                     )   **PRELIMINARY INJUNCTION;**
                                 )   **MEMORANDUM OF POINTS AND**
15                               )   **AUTHORITIES; SUPPORTING**
    DEUTSCHE BANK NATIONAL       )   **DECLARATION OF PLAINTIFF ADINA**
16  TRUST COMPANY, AS TRUSTEE    )   **ZAHARESCU AND AIDAN BUTLER.**
    FOR ASSET-BACKED PASS-       )
17  THROUGH CERTIFICATES,        )   **[[PROPOSED] TEMPORARY**
    SERIES 2004-FR1; QUALITY     )   **RESTRAINING ORDER AND ORDER**
18  LOAN SERVICE CORPORATION,    )   **TO SHOW CAUSE FILED**
    a California corporation; LITTON )  **CONCURRENTLY]**
19  LOAN SERVICING LP, a business )
    entity of form unknown;      )
20  AMERIQUEST MORTGAGE          )
    COMPANY, a Delaware          )
21  corporation; and DOES 1 through )  Date: April 9, 2009
    10, inclusive,               )   Time: Not Set
22                               )   Courtroom: 9B
                                 )
23            Defendants.        )
                                 )
24  _____  )

25          COMES NOW plaintiff ADINA ZAHARESCU (hereinafter "Plaintiff") and

26  applies ex parte for an temporary restraining order and order to show cause re

27  preliminary injunction barring any and all of the defendants herein from conducting a

28  trustee's sale on Plaintiff's home, located at 4351 La Barca Drive, Tarzana, California

1   91356 ("the Subject Property"), and more fully described as:

2

3       Lot 25 of Tract 28017 in the City of Los Angeles, County of Los Angeles, State

4       of California, as per may recorded in Book 756 Pages 70 through 76 inclusive

5       of maps in the office of the County Recorder of said County.

6

7       The Subject Property is designated Assessor's Parcel Number 2177-005-034.

8       The trustee's sale is now scheduled for April 16, 2009, at 10:30 am.

9       This ex parte application will be submitted to the above-entitled Court located

10  at 411 West Fourth Street, Santa Ana, CA 92701-4516.

11      Plaintiff's ex parte application will be based upon this notice, the attached

12  points and authorities, the supporting declarations of Plaintiff's counsel and of

13  Plaintiff, and the exhibits thereto, as well as the complaint, and the proposed

14  temporary restraining order and order to show cause.

15      As set forth in the attached Declaration of Aidan Butler, Plaintiff attempted to

16  resolve this matter by stipulation prior to filing.  No ex parte application has

17  previously been made in this matter.

18

19  DATED: April 8, 2009                    Respectfully submitted,

20

21

22                      By:   /S/ Aidan W. Butler   AB

23                            Aidan W. Butler
                              Attorneys for Plaintiff
24                            ADINA ZAHARESCU

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL BACKGROUND.

The factual background is set forth in the attached Declaration of ADINA ZAHARESCU. For the sake of brevity, the facts are not restated here.

## II. EX PARTE ACTION IS APPROPRIATE IN THIS CASE.

According to a notice of trustee's sale served by QUALITY LOAN SERVICE CORPORATION (hereinafter "QLSC"), there is now a trustee's sale scheduled for 10:30 am on April 16, 2009. Plaintiff could not have a noticed hearing in the time remaining before that date. Plaintiff has lived in the Subject Property as her sole residence since 1998.

## III. NONE OF THE DEFENDANTS HAS STANDING TO AUTHORIZE QLSC TO CONDUCT THE TRUSTEE'S SALE NOW SET FOR APRIL 16, 2009.

Plaintiff's note and deed of trust were pooled together with many other consumer mortgage deals pursuant to the terms of a pooling and servicing agreement, to which AMERIQUEST and DB were parties. The pooling and servicing agreement was required to be filed with, and actually was filed with, the Securities Exchange Commission, and was and is made publicly available at the following SEC website: http://idea.sec.gov/Archives/edgar/data/1286741/000088237704000939/d225414.txt.

Generally the purpose of pooling and securitizing mortgages is to allow various parties to profit by selling the rights to the combined income streams of the pooled mortgages. Such rights are typically sold in the form of asset-backed securities to various entities such as, for example, mutual funds. Pooling and servicing agreements govern the formation, management, conduct, and servicing of the trust, and the manner in the trust income is divided and sold.

In order to reassure investors about the potential risks of buying asset backed securities issued by the trust, and in order to shield participants in securitized trusts –

1  such as DB – from the possible misconduct of the original lenders, such

2  as AMERIQUEST,[1] pooling and servicing agreements expressly require that the

3  consumer debt obligations be transferred through various parties at around the same

4  time that the trust is formed.  In this case, those provisions are contained in paragraph

5  2.01, "Conveyance of Mortgage Loans."

6       That paragraph provides, "The Depositor, concurrently with the execution and

7  delivery hereof, does hereby transfer, assign, set over and otherwise convey to the

8  Trustee without recourse for the benefit of the Certificateholders all the right, title and

9  interest of the Depositor, including any security interest therein for the benefit of the

10  Depositor, in and to the Mortgage Loans identified on the Mortgage Loan Schedule,

11  the rights of the Depositor under the Mortgage Loan Purchase Agreement, all other

12  assets included or to be included in REMIC I."

13       It is important to note that "The Depositor" is not AMERIQUEST, the original

14  lender, but rather a company called Ameriquest Mortgage Securities, Inc. – a

15  purportedly bankruptcy/FDIC  remote entity, and a possible catalyst for a "holder-in-

16  due-course" argument.   It should be remembered that one of the core purposes of

17  securitization is the insulation of participants from activity by the original lender

18  which might result in liability.  See Kurt Eggert, *Held Up in Due Course: Predatory*

19  *Lending, Securitization, and the Holder in Due Course Doctrine*, 35 Creighton L.

20  Rev. 507 (Apr. 2002); LoPucki, *The Death of Liability*, 106 Yale L.J. 1 23-30 (1996).

21       Paragraph 2.01 also provides, "the Depositor does hereby deliver to, and

22  deposit with, the Trustee the following documents or instruments with respect to each

23  Mortgage Loan so transferred and assigned . . . ( I) the original Mortgage Note,

24  endorsed in blank, without  recourse, or in the following form: 'Pay to the order of

25  Deutsche Bank National Trust Company, as Trustee under the applicable agreement,

26  ───────────

27     [1] As set forth in the ZAHARESCU declaration, and show in Exhibit "10" thereto,

28  AMERIQUEST was eventually stripped of its license by the California Department of

Corporations – the "harshest penalty" the Department can impose.

without recourse,' with all prior and intervening endorsements showing a complete chain of endorsement from the originator to the Person so endorsing to the Trustee, or with respect to any lost Mortgage Note, an original Lost Note Affidavit . . ."

In other words, with the execution of the pooling and servicing agreement, the Depositor was to provide DB with the original note, endorsed in blank, or a lost note affidavit.  It should be noted that the pooling and servicing agreement is dated April 1, 2004, shortly after Plaintiff's loan funded.  It should also be noted that paragraph 2.02 – "Acceptance of REMIC I by the Trustee" – requires the Trustee (in this case DB) to execute an acknowledgment and receipt of the mortgage notes, and to certify, in essence,  that the procedures described in 2.01 were followed, and that the mortgage files were complete.

Yet what happened in this case was that an assignment of the deed of trust for Plaintiff's home was executed on December 22, 2008.  The assignment was directly from AMERIQUEST (not the Depositor) to DB (as trustee for the Asset-Backed Pass-Through Certificates, Series 2004-FR1).  This assignment was later recorded at the Los Angeles County Recorder's Office.  (See Exhibit "8.")

If the parties adhered to the terms of their own pooling and servicing agreement, however, AMERIQUEST had no security interest to assign to DB in December, 2008.  Pursuant to 2.01(ii), there would have been conveyances "from the originator to the Person so endorsing to the Trustee," where the AMERIQUEST was the "originator," Ameriquest Mortgage Securities, Inc. was the "Person so endorsing," also known as the "Depositor," and DB was "the Trustee."  That assignment would have occurred around April, 2004.

The pooling and servicing agreement was filed with the SEC, and therefore was presumably true and correct.  Further, the agreement was made available to the public – including investment banks and mutual funds – in order to reassure possible investors and regulators of the stability and liability-remoteness of the securitized trust.  The internal conveyancing rules were thus critical to the viability of the trust.

1    And yet now, apparently for the sake of convenience, on the very day the notice

2  of default was issued, the defendants concocted an assignment of the deed of trust

3  which is strikingly inconsistent with requirements of the agreement which DB and

4  AMERIQUEST agreed to be bound by, and which they informed the SEC and the

5  public their trust was governed by.

6    The discrepancy does not simply render the assignment of the deed of trust

7  void and unenforceable, it also raises questions about which – if any – of the

8  defendants is actually entitled to foreclose.  Resolving this issue requires reference to

9  the Uniform Commercial Code, codified in the California Commercial Code.

10    The Commercial Code provides in section 3301 that a note can be enforced by

11  the holder (defined in 1201(b)(21)), a nonholder in possession who has the rights of a

12  holder, and certain other people (for example, someone who lost the note and can

13  meet certain requirements for a lost note affidavit, but who once had the right to

14  enforce the note).  Section 1201(b)(21)(A) defines "holder" (as relevant to this case)

15  as "the person in possession of a negotiable instrument that is payable either to bearer

16  or, to an identified person that is the person in possession . . ."

17    Assuming we are not dealing with a holder, but a "nonholder in possession," by

18  definition such entity must be "in possession."  Further, in order to gain the rights of a

19  holder, a nonholder in possession must have been delivered the instrument.  3203(a).

20  Delivery requires voluntary transfer of possession.  1201(b)(15).

21    In either case, in order for any entity to enforce the note – which the deed of

22  trust is merely security for – that entity must be capable of producing the original note

23  or a valid lost note affidavit.  What has been offered here a patently false assignment

24  of the deed of trust.

25  ///

26  ///

27  ///

28  ///

# IV. BASED UPON AMERIQUEST'S VIOLATIONS OF THE TRUTH IN LENDING ACT, PLAINTIFF HAS DULY EXERCISED HER RIGHT TO RESCISSION.

The Truth in Lending Act provides consumers with a right to rescission under certain types of non-purchase money transactions involving their homes.  15 U.S.C. §1635 (a) provides, in pertinent part,

> "Except as otherwise provided in this section, in the case of any consumer credit transaction . . . in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so."  (Italics for emphasis.)

The three-day deadline is extended to three years, however, when certain material disclosures are never made.  As stated in *Pacific Shore Funding v. Lozo* (2006) 138 Cal.App.4th 1342, 1350, 42 Cal. Rptr. 3d 283, "If any required disclosures are not given, the borrower's right to rescind is extended from three days to three years after the date of consummation of the transaction." (Citing *inter alia* 15 U.S.C. §§1635(a) & (f); 12 C.F.R. § 226.23(a)(3) (2006)).)  The court adds, "Thus, 'a single violation of TILA, whether it be substantive or technical, extends a borrower's period for rescission.'" (Quoting from *Wiggins v. Avco Financial Services* 62 F. Supp. 2d 90, 94, (D.D.C. 1999) .)

In this case, there were three central problems: 1) Plaintiff was never provided a notice of right to cancel, 2) the disclosed APR was materially inaccurate, and 3) the

1  disclosed finance charge was off by more than $10,000.00.   Either problem would

2  constitute a sufficient basis for rescinding.

3

4  **A. PLAINTIFF WAS NEVER PROVIDED A NOTICE OF RIGHT TO**

5  **CANCEL.**

6      As stated by the court in *Semar v. Platte Valley Federal Savings & Loan*

7  *Association* 791 F.2d 699, 701-702 (9th Cir. 1986) "If the lending institution omits the

8  expiration date and fails to cure the omission by subsequently providing the

9  information, the borrower may rescind the loan within three years after it was

10 consummated."  Moreover, "the Ninth Circuit has held that the TILA and

11 accompanying regulations must be 'absolutely complied with and strictly enforced.'"

12 *Phleger v. Countrywide Home Loans, Inc.* 2007 U.S. Dist. LEXIS 86413, at p. 12

13 (N.D. Cal. 2007).

14      Although DB was not the original lender, 15 U.S.C. section 1641(c) provides,

15 "Any consumer who has the right to rescind a transaction under section 1635 of this

16 title may rescind the transaction as against any assignee of the obligation."  Congress

17 recognized that "[w]ithout such protection for the consumer, the right of rescission

18 would provide little or no effective remedy." (*Truth in Lending Simplification and*

19 *Reform Act: Report of the Comm. on Banking, Housing and Urban Affairs, U.S.*

20 *Senate to accompany, S. 108*; S. Rep. No. 73, 96th Cong., 1st Sess. 18 reprinted in

21 1980 U.S.C.C.A.N. 281, 296. *Accord* S. Rep. No. 96-368, 96th Cong., 2d Sess. 32-33,

22 reprinted in 1980 U.S.C.C.A.N. 236, 238 (intent of amendment is to "eliminate

23 ambiguity on the question of assignee liability for rescission by stating explicitly that

24 a consumer's exercise of this right is effective against an assignee.  Without such

25 protection for the consumer, the right of rescission would provide little or no

26 remedy.)

27      Based upon the violations of the Truth in Lending Act, Plaintiff has served,

28 pursuant to 15 U.S.C. §1635(a), a notice of cancellation.  However, none of the

1  defendants refunded a single penny of the finance charge collected from Plaintiff, as
2  is required under the Truth in Lending Act.   As set forth in 15 U.S.C. §1635(b),
3  "When an obligor exercises his right to rescind under subsection (a) of this section, he
4  is not liable for any finance or other charge, *and any security interest given by the*
5  *obligor, including any such interest arising by operation of law, becomes void upon*
6  *such a rescission.*" (Italics emphatic.)

7      Therefore, since the security interest relied upon by DB, LITTON and its
8  trustee, QLSC, is void by operation of law, the trustee's sale cannot proceed.

9

10     **B. THE FINANCIAL MISDISCLOSURES WERE MATERIAL.**

11     15 U.S.C. 1602(u) provides this definition: "The term 'material disclosures'
12  means the disclosure, as required by this subchapter, of the annual percentage rate,
13  the method of determining the finance charge and the balance upon which a finance
14  charge will be imposed, the amount of the finance charge, the amount to be financed,
15  the total of payments, the number and amount of payments, the due dates or periods
16  of payments scheduled to repay the indebtedness, and the disclosures required by
17  section 1639 (a) of this title."

18     In this case, the note contained an interest rate substantially (to be exact, .4%,
19  or nearly half a percent)  higher than that set forth in the documents Plaintiff received
20  before signing. Further, the final closing statement revealed that the discount fee
21  Plaintiff actually paid was more than twice what she had been quoted in the good
22  faith estimate.  The actual APR Plaintiff paid was well above the tolerable deviation,
23  as was the finance charge which obviously would include the discount fee.

24     Based upon the foregoing, Plaintiff has served, pursuant to 15 U.S.C. §1635(b),
25  a notice of rescission.   However, none of the defendants refunded a single penny of
26  the finance charge collected from Plaintiff, as is required under the Truth in Lending
27  Act. In fact, the defendants served Plaintiff a  notice of default and notice of trustee's
28  sale after Plaintiff mailed her Notice of Rescission.

1    Under 15 U.S.C . §1635(f), "An obligor's right of rescission shall expire three

2  years after the date of consummation of the transaction or upon the sale of the

3  property . . ." Although courts have been strict in enforcing that law, the court in

4  *Grimes v. New Century Mortg. Corp.*, 340 F.3d 1007, 1011 (9th Cir. 2003) pointed out

5  that "[u]nder Regulation Z, which specifies a lender's disclosure obligations,

6  'consummation' of the loan occurs when the borrower is 'contractually obligated.'"

7  (Citing 12 C.F.R. § 226.2(a)(13).) Further, "[t]he point at which a 'contractual

8  obligation . . . is created' is a matter of state law." (Citing 12 C.F.R. pt. 226, Supp. 1

9  (Official Staff Interpretation), cmt. 2(a)(13).) The court noted that "[u]nder

10  California law, a contract is formed when there are (1) parties capable of contracting,

11  (2) mutual consent, (3) a lawful object, and (4) sufficient cause or consideration."

12  (Citing Cal. Civ. Code § 1550.)

13    California Civil Code section 1580 provides, "Consent is not mutual, unless the

14  parties all agree upon the same thing in the same sense."

15    Moreover, section 1567 provides that apparent consent is not real or free when

16  obtained through, among other things, fraud, undue influence, or mistake.

17    Section 1571 clarifies that fraud can be actual or constructive, the former

18  consisting (according to 1572) of "1. The suggestion, as a fact, of that which is not

19  true, by one who does not believe it to be true; 2. The positive assertion, in a manner

20  not warranted by the information of the person making it, of that which is not true,

21  though he believes it to be true; 3. The suppression of that which is true, by one

22  having knowledge or belief of the fact; 4. A promise made without any intention of

23  performing it; or, 5. Any other act fitted to deceive."

24    Section 1573 defines "constructive fraud" to consist "1. In any breach of duty

25  which, without an actually fraudulent intent, gains an advantage to the person in fault,

26  or any one claiming under him, by misleading another to his prejudice, or to the

27  prejudice of any one claiming under him; or, 2. In any such act or omission as the law

28  specially declares to be fraudulent, without respect to actual fraud."

1    The facts of this case – where the actual terms of a loan, including the interest
2    rate, the fees taken by the lender, and the actual amount borrowed  – were concealed
3    by the withholding of documents and the presentation of materially inaccurate
4    documents – there is no meeting of the minds, and there is therefore no
5    consummation.   Accordingly, since consummation has not occurred, the three-year
6    period is not an obstacle to Plaintiff's claim.

7

8    ## V. DEFENDANTS DID NOT COMPLY WITH CALIFORNIA CIVIL CODE
9    ## SECTION 2923.5.

10    In July, 2008, the California State Legislature enacted Civil Code section
11    2923.5 on an emergency basis in the face of the continuing foreclosure pandemic.
12    "(a) (1) A mortgagee, trustee, beneficiary, or authorized
13    agent may not file a notice of default pursuant to Section 2924 until
14    30 days after contact is made as required by paragraph (2) or 30
15    days after satisfying the due diligence requirements as described in
16    subdivision (g).
17    "(2) A mortgagee, beneficiary, or authorized agent shall contact
18    the borrower in person or by telephone in order to assess the
19    borrower's financial situation and explore options for the borrower
20    to avoid foreclosure. During the initial contact, the mortgagee,
21    beneficiary, or authorized agent shall advise the borrower that he or
22    she has the right to request a subsequent meeting and, if requested,
23    the mortgagee, beneficiary, or authorized agent shall schedule the
24    meeting to occur within 14 days. The assessment of the borrower's
25    financial situation and discussion of options may occur during the
26    first contact, or at the subsequent meeting scheduled for that
27    purpose. In either case, the borrower shall be provided the toll-free
28    telephone number made available by the United States Department of

1  Housing and Urban Development (HUD) to find a HUD-certified housing

2  counseling agency. Any meeting may occur telephonically."

3       [...]

4  Defendants did not comply with the foregoing requirements. See the attached

5  Declaration of Plaintiff.

6

7  **VI. A PRELIMINARY INJUNCTION IS APPROPRIATE TO MAINTAIN THE**

8  **STATUS QUO PENDING TRIAL OF THIS MATTER.**

9       Federal Rule of Civil Procedure 65 authorizes trial courts to issue preliminary

10  injunctions and temporary restraining orders. The purpose of injunctive relief is to

11  preserve the parties' relative positions until a trial on the merits can be held. *E. & J.*

12  *Gallo Winery v. Adina Licores S.A.* (9th Cir. 2006) 446 F.3d 984, 990.

13       "The traditional equitable criteria for granting preliminary injunctive relief are

14  (1) a strong likelihood of success on the merits, (2) the possibility of irreparable

15  injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships

16  favoring the plaintiff, and (4) advancement of the public interest (in certain cases)."

17  *Dollar Rent A Car of Washington, Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1374

18  (9th Cir. 1985). A court may issue a preliminary injunction if plaintiff demonstrates

19  "'either: (1) a likelihood of success on the merits and the possibility of irreparable

20  injury; or (2) that serious questions going to the merits were raised and the balance of

21  hardships tips sharply in its favor.'" *Clear Channel Outdoor Inc., a Delaware Corp.*

22  *v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003) (quoting *Walczak v. EPL*

23  *Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999)); see *Miller v. California Pacific*

24  *Medical Center*, 19 F.3d 449, 456 (9th Cir. 1994). A serious question is one as to

25  which a party has "a fair chance of success on the merits." *Sierra On-Line, Inc. v.*

26  *Phoenix Software, Inc.* 739 F.2d 1415, 1421 (9th Cir. 1984, internal quotations

27  omitted).

28       A party seeking an injunction "need not demonstrate that he will succeed on

the merits, but must at least show that his cause presents serious questions of law worthy of litigation." *Topanga Press, Inc. v. City of Los Angeles* (9th Cir. 1993) 989 F.2d 1524, 1528, cert. denied, 511 U.S. 1030, 114 S.Ct. 1537, 128 L.Ed. 29 190 (1994).

In this case, Plaintiff has shown a strong probability of success on the merits; the documents from the escrow company and the final settlement statement show a discrepancy which amounts to a material misdisclosure under TILA. Aside from the lack of provision of the notice of right to cancel, this alone is a sufficient basis for rescinding. After rescission, there is no security interest left upon which to foreclose.

Further, the balance of hardships tips drastically in favor of Plaintiff. The loss of one's personal residence due to foreclosure constitutes irreparable injury. See, *Avila v. Stearns Lending, Inc.*, No. CV 08-0419-AG(CTx), 2008 WL 1378231, *3 (C.D. Cal. Apr. 7, 2008) ("Plaintiffs cite many cases for the proposition that '[l]osing one's home through foreclosure is an irreparable injury.'" See, e.g., *Wrobel v. S.L. Pope & Associates*, [No.07CV1591 IEG (BLM)], 2007 WL 2345036, *1 (S.D. Cal. June 15, 2007).

Further, Plaintiff will lose her right to rescission under 15 U.S.C. § 1635(f) if their home is foreclosed upon.

## VII. CONCLUSION.

For all of the foregoing reasons, plaintiff ADINA ZAHARESCU respectfully requests that the Court issue a T.R.O. restraining defendants from conducting a trustee's sale of the Subject Property, and an O.S.C. re preliminary injunction.

DATED: April 8, 2009                    Respectfully submitted,

                              By:   */S/ Aidan W. Butler*
                                     Aidan W. Butler
                                     Attorneys for Plaintiff
                                     ADINA ZAHARESCU

# DECLARATION OF ADINA ZAHARESCU

I, ADINA ZAHARESCU, declare and state:

1) I am over the age of eighteen, and the plaintiff in this action. I have personal knowledge of the following facts, and if called upon as a witness, I could and would testify as to their accuracy.

2) My sole residence is 4351 La Barca Drive in Tarzana, California. That has been my home since 1998.

3) On or around February 2, 2004, I was solicited by a loan agent working for AMERIQUEST MORTGAGE COMPANY (hereinafter "AMC"). The agent told me that if I refinanced with AMC, he could get me a lower interest rate, and reduce my monthly payments. He also assured me that since he worked directly for AMC, I would not have to pay any points or the high loan fees usually collected by loan brokers. Based on the agent's assurances, I agreed to refinance my home.

4) I applied over the telephone with an AMC agent named Maurice Wasko, who repeated the assurances made by the other AMC agent – basically, that based upon my excellent credit, AMC could give me refinancing which would lower my interest rate as well as my monthly payment.

5) On around February 16, 2004, I received a batch of loan documents in the mail, including a Truth-in-Lending Disclosure Statement, a true and correct copy of which is attached hereto as Exhibit "1," and is incorporated herein by this reference. The Disclosure Statement indicated that my monthly payment would be $3,332.36 for 359 months. I also received a Good Faith Estimate, a true and correct copy of which is attached hereto as Exhibit "2," and is incorporated herein by this reference. That document showed an interest rate of 6.7%, (see upper right), and a Discount fee of $11,691.79 (see line 802) which according to the loan agent is paid by the lender. The good faith estimate showed a total loan amount of $516,422.00. After reviewing these figures, I decided that I wanted to finalize the loan.

6) On around February 19, 2004, a notary hired by AMC came to my home and

1  had me the sign the loan documents, including the note and the deed of trust. The

2  pages were voluminous – I did not have time to review them word-by-word because

3  the notary told me she was behind schedule and had other stops to make – and of

4  course I assumed that they accurately reflected the terms of the original documents.

5  No one told me that the terms had been changed.

6      7) The notary sent to my home by AMC did not leave me copies of any of the

7  documents I had signed, so I called AMC and asked for copies.   AMC's personnel

8  told me over the phone that the loan would not be funded for at least a week, and that

9  they would be able to provide me with copies until after that time.

10      8) After more than a week went by, I called again, and this time I was told that

11  I might have to pay down outstanding credit card balances in order for the loan to be

12  finalized, and that I might also have to re-sign the loan documents.   I agreed to pay

13  down the debts as they suggested I would have to do.

14      9) Nothing more happened until the middle of March, 2004, when I received a

15  closing statement from a company called LSI, Financial National Financial Company,

16  along with some checks to use to pay my credit obligations.   However, I still did not

17  receive copies of the loan documents I had signed, or other documents, such as any

18  notice of right to cancel under the Truth in Lending Act.

19      10) In around August of 2007, I was seven months into a medically

20  complicated pregnancy. My husband – an immigrant – was detained by the I.N.S.

21  and I could not secure his release.   I was admitted to the hospital and my child was

22  born prematurely.  Despite these factors, I remained current on my loan and all of my

23  other financial obligations until around February, 2008.  My husband did not return

24  home until May of 2008, and I am still recovering from certain medical issues.

25      11) Although I began to take aggressive action to deal with my financial

26  problems, in June, 2008, I received a Validation of Debt Notice from the loan

27  servicer, LITTON.   A true and correct copy of the Notice is attached hereto as

28  Exhibit "3," and is incorporated herein by this reference. LITTON claimed that I

owed them $594,805.64, although I had been current on monthly payments of over $4,000.00 from March, 2004, through February, 2008. Attempting to sort this out, on July 3, 2008, I sent Litton a qualified written request under RESPA.

12) I received a response – though one that fell short of the information that I asked for – on or around August 18, 2008. This included a copy of the Note which I had signed, and a copy of the final closing statement. This was the first time I was actually provided a copy either. A true and correct copy of the Note is attached hereto as Exhibit "4," and is incorporated herein by this reference. A true and correct copy of the final closing statement is attached hereto as Exhibit "5," and is incorporated herein by this reference.

13) In paragraph 2 of the Note, the interest rate on the loan was disclosed to be 7.1. This is in contrast to the representations made to me in the TILA disclosure statement (which estimated a 6.9% APR), and in contrast to the good faith estimate, which showed a 6.7 % interest rate. Also, the Note revealed that the total loan amount was $600,000.00, rather than $516,422.00, which was the loan amount disclosed to me..

14) The final closing statement shows that I was assessed discount charges of nearly $25,000.00 – more than twice what the good faith estimate showed.

15) Based upon these problems – which, again, had been misrepresented and concealed from me for the more than three year period I was duly making payments on the loan – I sent a Notice of Rescission on December 19, 2008. A true and correct copy is attached hereto as Exhibit "6," and is incorporated herein by this reference. I sent this to LITTON, as well as DEUTSCHE BANK and AMERIQUEST MORTGAGE COMPANY.

16) I subsequently received a notice of default, dated December 22, 2008, and an Assignment of Deed of Trust purportedly executed on December 22, 2008, assigning the deed of trust from Ameriquest Mortgage Company to "Deutsche Bank National Trust Company, as Truistee for Asset-Backed Pass-Through Certificates,

1  Series 2004-FR1."  True and correct copies of these documents are attached hereto as

2  Exhibits "7" and "8," respectively, and are incorporated herein by this reference.

3          17) Subsequently, I received and a Notice of Trustee's Sale dated March 25,

4          2009, setting

5  the trustee's sale for April 16, 2009.  A true and correct copy of this document is

6  attached hereto as Exhibits "9," and is incorporated herein by this reference.  The

7  trustee's sale is now set for that date.

8          18) At no time did LITTON discuss my financial condition with me, or make

9  any good faith effort to explore options for avoiding foreclosure.  Although I made

10 repeated efforts to modify the loan through their loss mitigation department, my

11 attempts were fruitless.   Repeatedly, I faxed requests for modifications, but received

12 vacuous boilerplate responses which contained no information or guidelines.  On one

13 occasion I thought I had worked out a repayment plan with Litton, but then I received

14 a letter from LITTON dated July 25, 2008, claiming that they had received none of

15 the necessary information from me, and stating that if they did not receive my

16 response within ten days, the repayment plan would be void.  However, I did not

17 receive that letter until August 6, 2008 – when it was already too late.   Moreover, I

18 had already faxed and mailed all the information they requested to multiple numbers

19 and addresses.  Every time I was able to actually communicate with LITTON

20 personnel, I had to deal with someone new – someone without any awareness of what

21 had gone on before they took over, and without any familiarity with my file.

22          19) I ask that the court issue a restraining order and a preliminary injunction

23 stopping the foreclosure, so that I have a trial on the issues in this case.   While the

24 refinance money from Ameriquest went to pay off a prior encumbrance on my home,

25 I have taken good care of my home, and I believe I could refinance and pay back the

26 debt, if given the opportunity.

27          20) On January 30, 2009, I received a letter from the Department of

28 Corporations, indicating that Ameriquest, which originally defrauded me and

1  concealed the true terms of my loan from me, was stripped of its license.   The letter

2  pointed out, "License revocation is the harshest penalty we can impose."   A true and

3  correct copy the Department's letter is attached hereto as Exhibit "10," and is

4  incorporated herein by this reference.

5      I declare under penalty of perjury under the laws of the State of California and

6  the United States of America that the foregoing is true and correct.  Executed April 7,

7  2009  in Los Angeles, California.

8                                                 /S/ Adina Zaharescu AB
                                                  ADINA ZAHARESCU

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DECLARATION OF AIDAN W. BUTLER**

I, Aidan W. Butler, declare and state:

1) I am an attorney at law, duly licensed to practice before all of the Courts of the State of California, and admitted to practice in the U.S. District Court for the Central District of California. I am counsel for plaintiff herein. I have personal knowledge of the following facts, and if called upon as a witness, I could and would testify truthfully thereto.

2) On April 8, 2009, at approximately 2:30 pm, I telephoned attorney Charles E. Bell, an associate at McCarthy & Holthus, LLP. In correspondence to my client dated February 25, 2009, Mr. Bell identified his firm as counsel for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2004-FR1, as well as counsel for LITTON LOAN SERVICING LP and QUALITY LOAN SERVICE CORPORATION. (The same firm, McCarthy & Holthus, LLP, has appeared on behalf of QLSC in another case I am handling in the Central District.) Previously I had attempted to resolve my client's disputes with Mr. Bell, but I had been unsuccessful.

3) On the date and time set forth above, I informed Mr. Bell that I had just filed a lawsuit on behalf of ADINA ZAHARESCU against Mr. Bell's clients, and that I was preparing an ex parte application for a temporary restraining order blocking the defendants from proceeding with the trustee's sale scheduled for April 16, 2009, as well as an order to show cause re preliminary injunction. I indicated that the ex parte application would be filed April 9, 2009.

4) On April 9, 2009, I emailed Mr. Bell and his firm, McCarthy & Holthus, LLP (at cbell@mccarthyholthus.com), and faxed them (to (619) 685-4810), and mailed them (to 1770 Fourth Avenue, San Diego, CA 92101) the ex parte application (with the supporting declarations, exhibits, and the proposed order), along with the summons, complaint, notice of assignment, and notice of related case and interested

1  parties.   None of these documents were returned or "bounced back"; the fax machine

2  showed successful transmission of the all of the documents.

3      5) Neither Mr. Bell nor any other attorney at McCarthy & Holthus, LLP,

4  indicated to me any other person or entity that the documents should be sent to.

5      6) I have no information regarding attorneys representing AMERIQUEST

6  MORTGAGE COMPANY.  While AMERIQUEST is still an "active" corporation per

7  the California Secretary of State's website, my understanding is that the company was

8  effectively shut down by ACC Capital Holdings in 2007.   (See Exhibit "10" – the

9  letter from the Department of Corporations described AMERIQUEST as "out of

10  business.")  In any event, it appears that AMERIQUEST – the original lender – would

11  no longer have any interest in the resolution of Plaintiff's dispute with the current

12  mortgage holder and beneficiary.

13

14      I declare under penalty of perjury under the laws of the State of California and

15  the United States that the foregoing is true and correct.  Executed April 9, 2009, in

16  Los Angeles, California.

17

18

19                                      _/S/ Aidan W. Butler_   _AB_

20                                      Aidan W. Butler

21

22

23

24

25

26

27

28

# Exhibit 1

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: Ameriquest Mortgage Company
17785 Center Court Drive, #310
Cerritos, CA 90703
(562)860-6753
License # 603-3648

[X] Preliminary    [ ] Final

Borrowers: ADINA I ZAHARESCU

Broker License:

Type of Loan: FIXED RATE
Date: February 12, 2004

Address:
City/State/Zip:

Loan Number: 0070968862 - 5706

Property:    4351 LABARCA DR, Tarzana, CA  91356

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| (e) 6.956   % | $ 697,519.45 (e) | $ 502,127.21 (e) | $ 1,199,646.66 (e) |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | (e) $3,332.36 | 04/01/2004 | | | |
| 1 | (e) $3,329.42 | 03/01/2034 | | | |

**VARIABLE RATE FEATURE:**
[ ]    Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**    You are giving a security interest in the property located at:  4351 LABARCA DR, Tarzana, CA  91356

**ASSUMPTION:**    Someone buying this property [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**    You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

**LATE CHARGES:**    If a payment is late, you will be charged  6.000%  of the overdue payment .

**PREPAYMENT:**    If you pay off your loan early, you
[X] may    [ ] will not    have to pay a penalty.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.
**(e) = estimate**

We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____    _____
Borrower ADINA I ZAHARESCU    Date    Borrower    Date

_____    _____
Borrower    Date    Borrower    Date

.1 (Rev. 7/01)

7777777770707070007876652427177444007773352
5411564601071131763647105400774243737740
1223077424173758010010748050722265731007
00000070969862030575010T

**ORIGINAL COPY**

02/12/2004 12:36:31 PM

# Exhibit 2

Lender: Ameriquest Mortgage Co.

Address: 17785 Center Court Drive, #310
Cerritos, CA 90703

Applicant(s): ADINA I ZAHARESCU

Property Address: 4351 LABARCA DR
Tarzana, CA 91356

Base Loan Amou... ...22.00
Total Loan Amount: 516,422.00
Type of Loan: FIXED RATE
Date Prepared: February 12, 2004
Rate: 6.700 %    Term: 360 Months
Broker:

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A Settlement Statement that you will be receiving at settlement. The HUD-1 or HUD-1A Settlement Statement will show you the actual cost for items paid at settlement. The loan terms and fees may change based on the information gathered during the underwriting and loan approval process or as a result of negotiations between you and the Lender.

"L" designates those costs to be paid outside of closing by Lender.   "S" designates those costs to be paid by Seller   * Paid Outside of Closing

| 800 ITEMS PAYABLE IN CONNECTION WITH LOAN: | |
|---|---|
| 801 Loan Origination Fee ( %) | |
| 802 Loan Discount Fee ( 2.264 %) | $11,691.79 |
| 803 Appraisal/Property Valuation | $275.00 |
| 804 Credit Report ( to ) | |
| 805 Lender's Inspection Fee | |
| 806 Mortgage Insurance Application Fee | |
| 807 Assumption Fee | |
| 808 Yield Spread Premium to Broker | |
| 809 | |
| 810 Tax Related Service Fee | $70.00 |
| 811 Flood Search Fee | $16.00 |
| 812 Lender's Processing Fee | $626.00 |
| 813 Admin to Ameriquest Mortgage | $239.00 |
| 814 Doc Prep Fee to | |
| 815 Credit Report Fee paid to Broker | |
| 816 Origination Fee to broker ( %) | |
| 817 Application Fee to Ameriquest | $360.00 |
| 818 Underwriting Fee to Broker | |
| 819 Service Provider Fee to | |
| 820 Processing Fee to Broker | |
| 821 Underwriting Fee to Lender | |
| 900 ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | |
| 901 Interest for 10 days @ $94.80 per day | $948.00 |
| 902 Mortgage Ins Premium | |
| 903 Hazard Ins. Premium | |
| 904 Flood Ins. Premium | |
| 1000 RESERVES DEPOSITED WITH LENDER: | |
| 1001 Haz Ins Prem    months @ $ | |
| 1002 Mortgage Ins    months @ $ | |
| 1003 Earthquake Ins    months @ $ | |
| 1004 City Prop Taxes    months @ $ | |
| 1005 Annual Assmts    months @ $ | |
| 1006 Flood Ins    months @ $ | |
| 1007 Windstorm Ins    months @ $ | |
| 1008 | |
| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | |
| Down payment | |
| Est. Closing Costs | $14,799.79 |
| Est. Prepaid Items/Reserves | $948.00 |
| OTHER - POC Borrower | $0.00 |
| TOTAL EST. FUNDS NEEDED TO CLOSE | $15,744.79 |
| TOTAL FEES PAID BY LENDER | $0.00 |

| 1100 TITLE CHARGES: | | |
|---|---|---|
| 1101 Settlement or Closing Fee    to | | |
| 1102 Abstract or Title Search    to | | |
| 1103 Title Examination | | |
| 1104 Title Insurance Binder | | |
| 1105 Document Preparation Fee | | |
| 1106 Notary Fees | | |
| 1107 Attorney Fees | | |
| 1108 Title Insurance $1,046.00 to $1,320.00 | | $1,100.00 |
| 1109 | | |
| 1110 | | |
| 1111 Settlement/Disbursement Fee | | |
| 1112 Escrow Fee | L $0.00 | $298.00 |
| 1200 GOVERNMENT RECORDING AND TRANSFER CHARGES: | | |
| 1201 Recording Fees: | | $75.00 |
| 1202 City/County Tax/Stamps | | |
| 1203 | | |
| 1204 | | |
| 1205 | | |
| 1300 ADDITIONAL SETTLEMENT CHARGES: | | |
| 1301 Demand | | |
| 1302 Pest Inspection | | |
| 1303 Survey | | |
| 1304 Staff Appraiser Fee | | |
| 1305 Reconveyance Fee | | |
| 1306 | | |
| 1307 Apprsl/Prop Val Fee to | | |
| 1308 Courier Fee | | $46.00 |
| TOTAL ESTIMATED SETTLEMENT CHARGES | | $15,744.79 |
| TOTAL SETTLEMENT CHARGES PAID BY LENDER | | $0.00 |
| TOTAL ESTIMATED MONTHLY PAYMENT | | |
| Principal & Interest | | $3,332.36 |
| Real Estate Taxes | | |
| Flood & Hazard Insurance | | |
| Mortgage Insurance | | |
| TOTAL MONTHLY PAYMENT | | $3,332.36 |

THIS SECTION TO BE COMPLETED BY LENDER ONLY IF A PARTICULAR PROVIDER OF SERVICE IS REQUIRED. Use of the particular provider is required and the estimate is based on charges of the provider. If a particular provider is not mentioned, a provider will be required from a lender approved list.

| ITEM  NAME OF PROVIDER | ADDRESS OF PROVIDER | TELEPHONE | NATURE OF RELATIONSHIP |
|---|---|---|---|
| 803 Appraisal Repeated Use | | | Unaffiliated/Repeated Use |
| 804 Credit Repeated Use | | | Unaffiliated/Repeated Use |
| 810 Fidelity National Tax Service | 468 N. Rosemead Blvd., Pasadena, CA 91107 | 800-969-9724 | Unaffiliated/Used 100%/Tax |
| 811 First American Flood Data Service | 11902 Burnet Rd, Ste 200, Austin, TX 78758 | 800-447-1772 | Unaffiliated/Used 100%/Flood |
| 1101 Closing Agent Repeated Use | | | Unaffiliated/Repeated Use |
| 1108 Title Company Repeated Use | | | Unaffiliated/Repeated Use |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs", and the Consumer Handbook on ARM Mortgages, if applicable.

Applicant  ADINA I ZAHARESCU _____ Date _____    Applicant _____ Date _____

Applicant _____ Date _____    Applicant _____ Date _____

GFE (Rev. 7/03)

7777777070707000767652427177444007773352
5411564601071131176364710540077424373740
12230756043737780122074271516332447 10007
000007006066204001010101

# Exhibit 3

**LLS** Litton Loan
4828 Loop Central Drive
Houston, TX 77081
www.littonloan.com
Telephone: (800) 247-9727, Fax: (713) 960-9576

June 13, 2008

93685 0000038 001
ADINA ZAHARESCU
4351 LA BARCA DR
TARZANA CA 91356-5021

RE: Loan #:   0019583699
Property:   4351 La Barca Drive
Tarzana  CA 91356

### VALIDATION OF DEBT NOTICE

Dear Mortgagor(s):

1.   As of June 13, 2008, our records reflect the current amount of the debt is $594,805.64. The debt consists of principal, interest, and if applicable, negative escrow and service fees. For additional information, including a payoff request, please contact our office via mail, phone, or our website.

2.   The creditor to whom the debt is owed is AMERIQUEST SPECIAL SERVICING. Litton Loan Servicing LP ("Litton") is collecting the debt on behalf of AMERIQUEST SPECIAL SERVICING, and you may pay the debt to our office at the address indicated at the end of this notice.

3.   Unless you notify Litton within thirty (30) days of receipt of this notice that you dispute the validity of the debt, or any portion thereof, Litton will assume the debt to be valid.

4.   Within thirty (30) days of the receipt of this notice, you may dispute the validity of the debt in writing. At that time, Litton will obtain verification of the debt and a copy of such verification will be mailed to the referenced property address.

5.   Within thirty (30) days of receipt of this notice, you may request in writing that Litton provide you with the name address of original creditor.

6.   If you are not obligated on the debt, you are a debtor in bankruptcy, or the debt has been discharged in a bankruptcy proceeding, the servicer is not attempting to collect from you personally. You are being provided this notice as a courtesy because your interest in the real estate may be affected.

Should you have any questions, please contact our Default Administration Department at (800) 999-8501 or visit our website at www.littonloan.com. Written requests or inquiries should be sent to Litton Loan Servicing LP, Attention: Default Administration Department, 4828 Loop Central Drive, Houston, Texas 77081.

Sincerely,

Default Administration Department

LITTON LOAN SERVICING LP IS A DEBT COLLECTOR. THIS LETTER IS AN ATTEMPT TO COLLECT YOUR DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

# Exhibit 4

# FIXED RATE NOTE

Loan No. 0070968882-5705

February 19, 2004                     Orange                          CA
[Date]                               [City]                        [State]

4351 LA BARCA DRIVE, TARZANA, CA 91356
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 800,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is  Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 7.100 %.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A)  Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on   April 1, 2004.

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    March 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at:  505 City Parkway West, Suite 100,  Orange, CA 92868

or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments

My monthly payments will be in the amount of U.S. $4,032.20.

**4. BORROWER'S RIGHT TO PREPAY**

I may repay this Note at any time without a penalty.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  fifteen  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

1 of 2                         Initials: _____

200-1UNIV (Rev. 7/98)                              02/19/2004 10:03:02 AM

Loan No. 0070966862 - 5708

(D)  No Waiver by Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
(E)  Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7.  GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.
If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED



Borrower:  ADINA ZAHARESCU _____ (Seal)
SSN:  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

Borrower: _____ (Seal)
SSN:

Borrower: _____ (Seal)
SSN:

Borrower: _____ (Seal)
SSN:

2 of 2

02/19/2004 10:02:02 AM

300-5FIXED (Rev. 7/03)

# Exhibit 5



**LSI**
A FIDELITY NATIONAL FINANCIAL COMPANY

2550 Redhill Avenue • Santa Ana, CA 92705
(800) 756-3524 • FAX ( )

**DATE:** March 12, 2004                                          **TIME:** 13:32:32
**ESCROW NO:** 50000475-JAB
**ESCROW OFFICER:** Jackie A. Burchell                    **CLOSING DATE:** March 12, 2004

### BORROWER FINAL CLOSING STATEMENT

**LENDER(S):** Ameriquest - Amc5706
**BORROWER(S):** Adina Zaharescu
**PROPERTY:** 4351 La Barca Drive, Tarzana, CA 91356

| | $ DEBITS | $ CREDITS |
|---|---|---|
| **FINANCIAL:** | | |
| New 1st Trust Deed to Ameriquest - Amc5706 | | 600,000.00 |
| **TITLE CHARGES:** | | |
| ALTA Loan Policy (10-17-92) w/Form 1 Cov. for 600,000.00 | 1,920.00 | |
| Recording Deed | 100.00 | |
| Recording Trust Deed(s) | 100.00 | |
| **ESCROW CHARGES** | | |
| Escrow Fee | 150.00 | |
| Doc Prep Fees | 75.00 | |
| Express Mail | 21.00 | |
| Extra Check Charge | 40.00 | |
| **NEW LOAN CHARGES - AMERIQUEST - AMC5706** | | |
| **Total Loan Charges: $26,683.84** | | |
| Loan Discount | 24,756.00 | |
| Tax Service Fee | 70.00 | |
| Loan Processing Fee | 626.00 | |
| Notary Fee    Paid to Patricia Gabriola | 150.00 | |
| Flood Certification Fee | 16.00 | |
| Administration Fee | 239.00 | |
| Application Fee | 360.00 | |
| Interest at $116.71 per day  from 02/26/04 to 03/01/04 | 466.84 | |
| **PAYOFFS - Litton Loan Servicing,LP-TX** | | |
| **Total Payoff $515,305.37** | | |
| Principal Balance | 483,006.81 | |
| Interest to 03/10/04 | 13,063.51 | |
| Interest Fr. 03/10/04 To 03/15/04 | 645.10 | |
| Reconveyance Fee | 45.00 | |
| Late Charges | 773.25 | |
| Defer Late Charges | 515.50 | |
| Escrow Advance | 15,116.48 | |
| Prev Servicer | 2,046.72 | |
| Additional Costs | 93.00 | |
| **MISCELLANEOUS CHARGES:** | | |
| Los Angeles County Tax Collector (CA) for 1st half 2003-2004 taxes . | 3,458.85 | |
| Los Angeles County Tax Collector (CA) for Tax Default | 7,145.01 | |
| FNB OMAHA | 7,182.00 | |
| Wells Fargo Bank | 1,033.00 | |
| First USA Bank | 745.00 | |
| Mercedes Benz Credit | 2,211.00 | |

**Exhibit 6**

From,
Adina Zaharescu,
4351 La Barca Drive,
Tarzana, CA, 91356.
December 19, 2008.

To,
Litton Loan Servicing,
4828 Loop Central Drive,
Houston, TX 77081.

RE:     Loan Number:  19583699
        Property Address:     4351 La Barca Drive, Tarzana, CA 91356.

**BY CERTIFIED MAIL WITH ACKNOWLEDGEMENT DUE:  7008 1140 0003 4746 8698**

**<u>NOTICE OF RESCISSION AND CANCELLATION OF TRUST DEED</u>**

Dear Sirs,

On October 12, 2008 and on November 26, 2008, I sent you two letters indicating the issues I have related to the Loan with Ameriquest Mortgage Company.  These issues were never addressed by your office or by your principals.

I also sent to you a Notice of Default and a Notice of Intent to file a Notice of Rescission on November 26, 2008.  However, instead of acknowledging or responding to my letter and an AUDIT REPORT sent to you, you have continued to ignore my request and again as usual sent me another generic letter you have been sending me for the last six months ever since I have sent to you a Qualified written request. A copy of your generic letter is attached herewith.

I had specifically asked you or your legal counsel to respond to my request within 10 business days from the date of my last correspondence to you.  A copy of that letter was also sent to Department of Corporations, Director, Office of RESPA and Interstate Land Sales by certified mail.

Thereafter the Department of Corporations has also addressed this issue with you and their file number is 413-0234.  Further, US Department of Housing and Urban Development has referred this matter to FHEO Region IX Office for further action.

I have waited beyond 10 business days and today is December 19, 2008 which is approximately 17 business days from the date of my last correspondence to you.  I have waited patiently for about 180 days or more for your office to address the issues with my loan.  Today we have reached the end of that waiting period.

Attached herewith is a copy of NOTICE OF RESCISSION AND CANCELLATION OF TRUST DEED duly filed with the County Recorder's office of Los Angeles County, vide Instrument number 20082235355 on December 19, 2008 at 4:59 PM.

This loan is hereby rescinded and I will be taking affirmative steps to enforce this rescission in an appropriate Federal District Court in the Central District of California.

If you have any questions please do not hesitate to write to me. I am under specific instructions by my counsel to maintain written communication with your office and I am hoping that your office will take necessary steps either to remedy this situation or take appropriate steps to cancel this illegal loan and return the security instrument on my property.

Meanwhile I will look forward to your response in this matter.

A copy of this letter to you is also being sent to:

1.  Director, Office of RESPA and Interstate Land Sales
    US Department of Housing and Urban Development
    Room 9154
    451 7th Street, SW
    Washington, DC 20410.    Certified mail No: 7008 0150 0001 5094 7465    1140 0003 9782 4485

2.  Department of Corporations,
    Consumer Services Office
    1515 K Street, Suite 200,
    Sacramento, CA 95814.    Certified Mail No: 7008 0150 0001 5094 7458    1140 0003 4746 8735

Please write to me at the above address for any further communication and response you may have in this matter.

My Phone number is:    (818)342-2404  My fax number is:      (818)342-6318.

Thanking you in anticipation,

I remain,

Sincerely Yours,



Adina Zaharescu.

2

# Exhibit 7

**LSI Title Company (CA)**

Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY
RECORDED ON:    December 29, 2008

AS DOCUMENT NO:   08-2254987  BK: / PG:

BY:    s/ Title Court Automation

LSI TITLE COMPANY (CA)

08 016 0000

TS No.: CA-08-226853-BL              Loan No.: 19583699           Space above this line for Recorder's use

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is **$48,779.91** as of 12/22/2008 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Litton Loan Servicing LP
C/O Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 2/19/2004, executed by ADINA ZAHARESCU, A MARRIED WOMAN, AS HER SOLE AND SEPARATE PROPERTY, as Trustor, to secure certain obligations in favor of AMERIQUEST MORTGAGE COMPANY, as beneficiary, recorded 3/12/2004, as Instrument No. 04 0593924, in Book xxx, Page xxx of Official Records in the Office of the Recorder of LOS ANGELES County, California describing land therein: **as more fully described in said Deed of Trust.**

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $600,000.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and advances which became due on 2/1/2008 plus amounts that are due or may become due for the following: late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2935.5.

Dated: 12/22/2008

**Quality Loan Service Corp., AS AGENT FOR BENEFICIARY**
BY: LSI Title Company, as Agent

Merilyn L. Aguas

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

# Exhibit 8

Recording requested by:

When recorded mail to:

Litton Loan Servicing LP
4828 Loop Central Drive
Houston, TX 77081

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDED ON: __February 17, 2009__

AS DOCUMENT NO: __09-209996__ BK: / PG:

BY: __s/ Title Court Automation__

LSI TITLE COMPANY (CA)

Space above this line for recorders use

TS # CA-08-226853-BL          Order # 080160000-CA-MAI          Loan # 19583699
                                                                Investor No. 70968862

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

**Deutsche Bank National Trust Company, as Trustee for Asset-Backed Pass-Through Certificates,
Series 2004-FR1**

all beneficial interest under that certain Deed of Trust dated 2/19/2004 executed by ADINA ZAHARESCU,
A MARRIED WOMAN, AS HER SOLE AND SEPARATE PROPERTY, as Trustor(s) to TOWN AND
COUNTRY TITLE SERVICES, INC., as Trustee and recorded as Instrument No. 04 0593924, on
3/12/2004, in Book xxx, Page xxx of Official Records, in the office of the County Recorder of LOS
ANGELES County, CA together with the Promissory Note secured by said Deed of Trust and also all
rights accrued or to accrue under said Deed of Trust.

Dated: 12/22/2008 1:40 PM                    AMERIQUEST MORTGAGE COMPANY

                                             By: PATRICIA OLVERA, VICE PRESIDENT

State of CA          }
County of ORANGE     }

On 2/4/09 before me, _____          **Laura Bursey**          _____ a notary public
personally appeared PATRICIA OLVERA _____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the
State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ Laura Bursey _____ (Seal)

LAURA BURSEY
COMM. # 1792796
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Exp. Nov. 28, 2010

# Exhibit 9

Recording requested by:
Quality Loan Service Corp.

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

---

TS # CA-08-226853-BL            Loan # 19583699            SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 2/19/2004. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):     **ADINA ZAHARESCU, A MARRIED WOMAN, AS HER SOLE AND SEPARATE PROPERTY**
Recorded:       3/12/2004 as Instrument No. 04 0593924 in book xxx, page xxx of Official Records in the office of the Recorder of **LOS ANGELES** County, California;

Date of Sale:   **4/16/2009 at 10:30 AM**
Place of Sale:  **At the West side of the Los Angeles County Courthouse, directly facing Norwalk Blvd., 12720 Norwalk Blvd., Norwalk, CA.**
Amount of unpaid balance and other charges: **$667,639.41**
The purported property address is:      **4351 La Barca Drive
                                        Tarzana, CA 91356**
Assessors Parcel No. 2177-005-034

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

Date: 3/25/2009                 **Quality Loan Service Corp.**
                                **2141 5th Avenue**
                                **San Diego, CA 92101**
                                **619-645-7711 For NON SALE information only**
                                **Sale Line: 714-730-2727 or Login to: www.fidelityasap.com**
                                **Reinstatement Line: (800) 247-9727**

---

Quality Loan Service, Corp.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

# Exhibit 10

STATE OF CALIFORNIA -- BUSINESS, TRANSPORTATION AND HOUSING AGENCY          ARNOLD SCHWARZENEGGER, *Governor*

# DEPARTMENT OF CORPORATIONS
*California's Investment and Financing Authority*

**Los Angeles, California**



IN REPLY REFER TO:
FILE NO:  4130234

January 30, 2009

Ms. Adina Zaharescu
4351 La Barca Drive
Tarzana, CA  91356

Re: Complaint Against Litton Loan Servicing

Dear Ms. Zaharescu:

We are in receipt of your complaint where you state the issues are misrepresentation and fraudulent acts by the licensee during your loan transaction. Ameriquest Mortgage was your lender. Also, you contend that Litton Loan Servicing is uncooperative, and not responding to your requests to cancel or modify your loan.

Your lender, Ameriquest Mortgage, is out of business and is no longer licensed by this Department.  License revocation is the harshest penalty we can impose. Also, the Department, by law, cannot litigate or adjudicate criminal matters, such as fraud. *Your recourse in this matter would be to seek legal counsel and a court of proper jurisdiction.*

Litton Loan Servicing, LLC has taken the position that they will continue to collect this debt and enforce their rights as servicer. **Only a court of law can rescind or cancel a contract.** We cannot, by law, compel this company to provide you with a loan modification. You could try to continue to work with this servicer to obtain a mutually agreed resolution, *while also seeking legal counsel* to protect your legal rights in this matter. Litton provided a Financial Information Form in their letter dated 12/17/08, and requested additional financial documents to be sent to their loss Mitigation Department to initiate another try at getting a payment plan. That would be your decision, and you may wish to seek legal counsel regarding your options at this time.

If you need additional advice with your situation, we would like to refer you to the Homeownership Preservation Foundation. This is a nonprofit foundation that may be able to assist you with your questions. Call 888-995-HOPE or go to www.995hope.org for additional information.

Thank you for contacting us with your concerns.

Sincerely,

Richard Malme
Corporation Examiner
(213) 576-6201

♦ Securities ♦ Franchises ♦ Off-Exchange Commodities ♦ Investment and Financial Services ♦
♦ Independent Escrows ♦ Consumer and Commercial Finance Lending ♦ Residential Mortgage Lending ♦

SACRAMENTO 95814-4052
1515 K STREET, SUITE 200
(916) 445-7205

SAN FRANCISCO 94105-2980
71 STEVENSON STREET, SUITE 2100
(415) 972-8559

LOS ANGELES 90013-2344
320 WEST 4TH STREET, SUITE 750
(213) 576-7500

SAN DIEGO 92101-3697
1350 FRONT STREET, ROOM 2034
(619) 525-4233